

**SO ORDERED.**
**SIGNED this 6th day of April, 2012**

**THIS ORDER HAS BEEN ENTERED ON THE DOCKET.**
**PLEASE SEE DOCKET FOR ENTRY DATE.**

_____
John C. Cook
**UNITED STATES BANKRUPTCY JUDGE**

_____

# IN THE UNITED STATES BANKRUPTCY COURT FOR
# THE EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| **In re:** | ) | |
| | ) | |
| **Luis H. Rivas** | ) | **No. 08-12333** |
| | ) | **Chapter 7** |
| **Debtor** | ) | |
| | ) | |
| **W. Grey Steed, Trustee** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| v. | ) | **Adv. No. 10-1371** |
| | ) | |
| **Carol Hawkins** | ) | |
| | ) | |
| **Defendant** | ) | |

# M E M O R A N D U M

This adversary proceeding is before the court on the plaintiff's motion for summary judgment on his complaint seeking the avoidance and recovery of alleged fraudulent transfers made by the debtor to the defendant. Having reviewed the plaintiff's motion, the parties' briefs, the plaintiff's statement of undisputed material facts, and the affidavit, deposition transcript, and other materials

submitted in support of or in opposition to the motion, the court concludes that the plaintiff is entitled to summary judgment in this proceeding for the reasons that follow.

# I.

The record reveals the following undisputed material facts.[1] The debtor, doing business as the Forex Project, operated a Ponzi scheme from January 2007 to May 2008. (Affidavit of Ralph Q. Summerford, CPA, ABV, CFE, CIRA, CFF ¶ 5, Ex. C at 5-9.)[2] A Ponzi scheme is a fraudulent enterprise in which the scheme operator solicits investments, usually with the promise of high returns, and then uses funds obtained from new investors to make payments to earlier investors. (Summerford Report at 3-4.) Also, it is common for the Ponzi scheme operator to divert investors' funds to the operator's personal use and benefit in order to present a facade of great wealth and success, which is designed to attract even more new investors. (Summerford Report at 9.) *See Steed v. Morgan (In re Rivas)*, Ch. 7 Case No. 08-12333, Adv. No. 08-1137, 2010 WL 2265663, at *1 (Bankr. E.D. Tenn. June 3, 2010).

The debtor's scheme in this case consisted of obtaining funds from investors based on the representation that he would use the funds to trade in the foreign currency exchange market. (Summerford Report at 8.) In obtaining funds from numerous investors, the debtor issued at least

---

[1] Unless otherwise indicated, these facts are taken from the Trustee's Statement of Undisputed Material Facts in Support of Motion for Summary Judgment that was filed on March 12, 2012 (document no. 41), which includes citations to materials in the record as required by this court's Local Rule 7056-1(a), and to which the defendant has not responded. *See* E.D. Tenn. LBR 7056-1(b) (requiring party against whom motion for summary judgment is filed to file response to movant's statement of undisputed material facts within 21 days, failing which "the material facts set forth in the movant's statement will be deemed admitted").

[2] This affidavit is document no. 42 in the adversary proceeding file, and will be referred to hereinafter as "Summerford Affidavit." Exhibit C to the affidavit will be referred to hereinafter as "Summerford Report."

468 fixed rate promissory notes in the aggregate principal amount of $27,019,178 between January 24, 2007, and May 7, 2008. (*Id.* at 5-6.) The returns promised for those who invested with the debtor varied from 36% per year to 120% per year with the vast majority of the investors being promised a return on their investments of 5% per month, or 60% per year. (*Id.* at 7.)

The scheme operated by the debtor ultimately collapsed, with the debtor becoming insolvent as of April 30, 2007, and the insolvency deepening to $26,935,800 by the end of May 2008. (*Id.* at 9.) An involuntary bankruptcy petition was filed against the debtor on May 15, 2008, and an order for relief was entered on June 10, 2008.

The defendant holds a bachelor of science degree in physical therapy and has been a licensed, practicing physical therapist over the last 38 years. In 2004, she also became licensed to sell life and health insurance, including annuities and long-term care insurance. In her capacity as an insurance agent, the defendant earned approximately $40,000 in 2005, $50,000 in 2005 and 2006, $62,000 in 2007, and $47,000 in 2008.

At the end of 2006, the defendant gave the debtor $90,000 to invest in the Forex Project. The defendant also worked for the debtor as an "equity agent," introducing new investors to the debtor in exchange for a commission of 2%-3% per month on the total amount invested by her prospects. Her duties included assisting new investors in effecting transfers to the debtor. The defendant received commissions totaling $355,003.44 during the period May 2007 through February 2008. She also received a check for $19,950.00 dated September 6, 2007, approximately $15,000 of which was a bonus for helping organize and operate a training seminar, approximately $2,000 of which was an interest payment, and the balance of which was reimbursement for expenses in entertaining potential clients. The defendant also received a check for $126,000.00 dated November 7, 2007, which was

a return on her investment in the Forex Project plus interest. She also received a check for $16,006.00 dated December 23, 2007, which was reimbursement for a trip taken by her and her husband that she "won" from the debtor. The defendant also received a check for $10,000.00 dated December 24, 2007, as a year-end bonus.

The forensic accountant retained by the plaintiff has rendered his professional opinion that the defendant was "vastly overcompensated by the Debtor (Rivas) for the amount and nature of work that she performed from May 2007 to February 2008." (Summerford Affidavit ¶ 7.) The expert witness explained:

> Hawkins received $559,165.12 in salary, commissions, reimbursements, and bonuses from May 2007 to February 2008, a period of only 10 months. In my experience and based upon my research, the average compensation for the type and nature of work performed by Hawkins would be approximately $77,914.00 per year (includes salary, commissions, and bonuses). Applying this amount to a ten month period would yield $64,928.33. Consequently, one can easily see that Hawkins was paid $494,236.79 more than the average.
>
> It is also important to note that bonuses for this type of work typically follow the success and profitability of the firm. Since the Forex project was a Ponzi scheme that obtained its funds from new investors (as opposed to making money from legitimate gains in its investments), the Forex project had little, if any, financial success and/or profitability. Additionally, the only way a Ponzi scheme can survive for any period of time is by keeping the perpetrator flush with cash. This is accomplished by obtaining funds from new investors whose money (or a large portion of it) is not actually invested. The new investor's funds are used to pay earlier investors and to fund the lifestyle of the perpetrator. Consequently, the Ponzi scheme requires new investors to continue to operate. It is my professional opinion that since the Debtor (perpetrator) was flush with cash and since one of Hawkins's duties was to recruit new investors, the Debtor paid Hawkins exorbitant amounts of commissions to ensure that new investors continued to join the Ponzi scheme.
>
> It is my professional opinion that Hawkins did not provide "reasonably equivalent value" for the $559,165.12 that she received from May 2007 to February 2008. It is also my professional opinion that the vast majority of these payments (if not all) constitute fraudulent transfers to Hawkins that should be avoided in the current adversary proceeding. It is important to note that the Trustee is not seeking to recover $127,155.68 of the amounts paid to Hawkins, but would allow Hawkins to

> retain that amount. Based upon my analysis of compensation for an investment broker, even if the Trustee is successful in avoiding payment of $432,009.44 to Hawkins, she still would have been paid approximately $62,227.353 ($127,155.68-64,928.33=$62,227.35) more than the average investment broker in the top 10 investment broker markets in the U.S.

(*Id.* ¶¶ 7-9.) The defendant has offered no evidence to refute the forensic accountant's opinion or analysis.

On July 10, 2008, the defendant filed two proofs of claim in the debtor's bankruptcy case. Proof of claim no. 238 asserts a claim in the amount of $47,984.62 and that the claim is entitled to priority as a consumer deposit under 11 U.S.C. § 507(a)(7). The claim is for funds that the defendant invested in the Forex Project through an individual retirement account. The plaintiff challenges the amount of the claim:

> Hawkins has admitted that her actual investment was $37,635.10 and the documents attached to Claim 238 reflect that her investment was $37,635.10. (See Exh. H; See Exh. B, p. 45). Hawkins admits that interest payments were made by Debtor to her account at Equity Trust and the Debtor's records show payments of interest totaling $11,478.67. (Exh. B, p. 89). Accordingly, the correct amount of Hawkins' claim should be the $37,635.10 minus the payments received of $11,478.67 for a claim of $26,156.43.

(Br. in Supp. of Trustee's Mot. for Summ. J., at 28 (filed March 12, 2012).) However, the cited evidence does not support the plaintiff's assertions.[3] Proof of claim no. 242 asserts a claim in the amount of $104,000.00 and that the claim is entitled to priority as a consumer deposit under 11

---

[3] The attachments to the proof of claim reflect an initial investment of $37,635.00 and do not reflect interest payments totaling $11,478.67. At page 45 of her deposition transcript, the defendant testified only that she had deposited "thirty-nine thousand and something" into the investment account and, "I guess it was the 37,639. But there was, I think, 2,000 more that was put in that is not listed here that was a cash thing initially." At pages 86-89 of the transcript, the defendant testified that interest was paid on the investment account, but she did not specify how much interest was paid. She was apparently looking at a document at the time she was asked about this claim, but the plaintiff has not submitted the document itself in support of his motion for summary judgment.

-5-

U.S.C. § 507(a)(7). The claim is for funds that the defendant had deposited in a trading account with Interbank FX. The account was solely in the defendant's name and only she had authority to make withdrawals from the account. (Transcript of Deposition of Carol Hawkins at 47[4]). The debtor's only relationship with the account is that he had a power of attorney to make investment trades for the defendant. (*Id.* at 34-35, 47.) However, the defendant asserts that she lost all or part of the investment as a result of the debtor's bad trades. (*Id.* at 35-36.)

On June 9, 2010, the plaintiff filed the complaint initiating this adversary proceeding, which sought to avoid and recover transfers totaling $559,165.12. On March 18, 2011, the plaintiff filed in the debtor's chapter 7 case the Trustee's Third Omnibus Objection to Claims, which seeks the disallowance of the claims asserted by the defendant on the ground that "Debtor's books and records reflect that there is no liability owing to this Claimant." By an order entered on January 13, 2012, the objection to the defendant's claims was consolidated with this adversary proceeding. On March 12, 2012, the plaintiff filed the motion for summary judgment presently before the court. That motion seeks summary judgment for $432,009.44, representing the commission payments ($355,003.44), plus the interest paid on the defendant's investment in the Forex Project ($36,000.00), plus bonuses ($25,000.00), plus the amount paid for the trip for the defendant and her husband ($16,006.00). The plaintiff also seeks the disallowance of the claims asserted by the defendant.

---

[4] The transcript of the deposition taken on February 22, 2012, is Exhibit B to the Brief in Support of Trustee's Motion for Summary Judgment filed on March 12, 2012 (document no. 40).

## II.

A party is entitled to summary judgment if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Bankr. P. 7056; Fed. R. Civ. P. 56(c)(2). When deciding a motion for summary judgment, the court will construe all reasonable inferences in favor of the non-moving party. *Waeschle v. Dragovic*, 576 F.3d 539, 543 (6th Cir. 2009) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). Where the evidence would permit a reasonable jury to return a verdict for the non-moving party, a genuine issue of material fact exists and summary judgment must be denied. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In the face of a summary judgment motion, the nonmoving party may not rest on its pleadings, but must come forward with some probative evidence to support its claim. *Celotex v. Catrett*, 477 U.S. 317, 324 (1986); *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987) (holding that nonmoving party must present "some significant probative evidence" that would enable jury to return verdict for it). In the words of Rule 56(e)(2) of the Federal Rules of Civil Procedure, the opposing party "must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party." Likewise, "a defendant who is faced with a summary judgment motion has the same burden as a plaintiff against whom a defendant seeks summary judgment. That burden requires that the non-moving party with the burden of proof on the issue in question produce sufficient evidence upon which a jury could return a verdict favorable to

the nonmoving party." *Katz v. Wells (In re Wallace's Bookstores, Inc.)*, 316 B.R. 254, 263 (Bankr. E.D. Ky. 2004) (citation omitted).

### III.

#### A.

The plaintiff seeks to avoid and recover the transfers described above under provisions of the bankruptcy law that permit the recovery of fraudulent transfers.[5] These laws "generally attempt to protect creditors from transactions which are designed to, or have the effect of, unfairly draining the pool of assets available to satisfy creditors' claims, or which dilute legitimate creditor claims at the expense of false or lesser claims." 5 Alan N. Resnick & Henry J. Sommer, *Collier on Bankruptcy* ¶ 548.01[1][a] (16th ed. 2012). Fraudulent transfer laws aim "to make available to creditors those assets of the debtor that are rightfully a part of the bankruptcy estate, even if they have been transferred away." *Buncher Co. v. Official Comm. of Unsecured Creditors of GenFarm Ltd. P'ship IV*, 229 F.3d 245, 250 (3d Cir. 2000).

The plaintiff seeks to avoid the transfers pursuant to § 548(a)(1)(A) of the Bankruptcy Code, which provides, in pertinent part:

> The trustee may avoid any transfer . . . of an interest of the debtor in property . . . that was made . . . on or within two years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
>
> > (A) made such transfer . . . with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date such transfer was made . . . indebted.

---

[5] The plaintiff also seeks to avoid the transfers utilizing Tennessee's fraudulent transfer statutes. Because the Bankruptcy Code's fraudulent transfer provisions are applicable to all the transfers at issue here, it is not necessary to consider the application of state law.

-8-

11 U.S.C. § 548(a)(1)(A). There is no genuine issue that all of the transfers at issue in this proceeding were transfers of interests of the debtor in property made to the defendant within two years before the filing of the bankruptcy petition. Moreover, the transfers were made with "actual intent to hinder, delay, or defraud" creditors. There is no genuine issue that the debtor operated a Ponzi scheme, in which he obtained funds from investors that he fraudulently diverted to himself and others, including the defendant. In perpetrating the Ponzi scheme, the debtor had to know that the money from investors would eventually run out and that the extravagant payments and gifts that the debtor was making to himself and others, including the defendant, would contribute to the eventual collapse of the scheme. Knowledge that future investors will not be paid is sufficient to establish actual intent to defraud those investors. *See Liebersohn v. Campus Crusade for Christ, Inc.( In re C.F. Foods, L.P.),* 280 B.R. 103, 111 (Bankr. E.D. Pa. 2002); *Rafoth v. First Nat'l Bank (In re Baker & Getty Fin. Servs., Inc.)*, 98 B.R. 300, 308 ( Bankr. N.D. Ohio 1989), *aff'd*, 974 F.2d 712 (6th Cir. 1992). As a panel of the Sixth Circuit has stated: "Since 1966, this court has found that the question of intent to defraud in a Ponzi scheme 'is not debatable.'" *Emerson v. Maples (In re Mark Benskin & Co.)*, 59 F.3d 170 (6th Cir. 1995) (unpublished table decision), *available at* 1995 WL 381741, at *5 (citing *Conroy v. Shott*, 363 F.2d 90, 92 (6th Cir. 1966)). The plaintiff is entitled to a judgment avoiding the subject transfers pursuant of 11 U.S.C. § 548(a)(1)(A).

All of the transfers avoidable under Subparagraph (A) of § 548(a)(1) of the Bankruptcy Code are also avoidable pursuant to the plaintiff's alternative theory of recovery under Subparagraph (B). That provision states, in relevant part:

> The trustee may avoid any transfer . . . of an interest of the debtor in property . . . that was made . . . on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

> . . . .
>
> > (B)(i) received less than reasonably equivalent value in exchange for such transfer . . .; and
> >
> > (ii) (I) was insolvent on the date that such transfer was made . . . or became insolvent as a result of such transfer.

11 U.S.C. § 548(a)(1)(B). As indicated above, there is no genuine issue that the transfers were transfers of interests of the debtor in property made to the defendant within two years before the filing of the bankruptcy petition. Nor is there any genuine issue that the debtor was insolvent at the times of the transfers.

In addition, the transfers were not made in exchange for reasonably equivalent value. As set forth at length above, the forensic accountant retained by the plaintiff in this proceeding has attested that, in his opinion, the compensation (salary, commissions, and bonuses) that the defendant received that the plaintiff is *not* seeking to recover was more than $60,000 more than the average compensation received by a broker in the top ten investment broker markets in the United States, and the defendant has not submitted any contrary evidence.[6] Moreover, insofar as the return on the

---

[6] The plaintiff's expert witness also "noted that many courts have found that a brokers or agents who bring in new investors in a Ponzi scheme do not provide any reasonably equivalent value since their efforts simply contribute to the scheme's deepening insolvency. The same could certainly be said for Hawkins." (Summerford Affidavit ¶ 10.) Indeed, many of the cases so hold. *E.g.*, *Warfield v. Byron*, 436 F.3d 551, 560 (5th Cir. 2006); *Miller v. Humphrey (In re Waterford Funding, LLC)*, Bankr. No. 09-22584, Adv. No. 10-02889, 2012 WL 380773, at *5 (Bankr. D. Utah Feb. 6, 2012); *Martino v. Edison Worldwide Capital (In re Randy)*, 189 B.R. 425, 441 (Bankr. N.D. Ill. 1995); *Dicello v. Jenkins (In re Int'l Loan Network, Inc.)*, 160 B.R. 1, 16 (Bankr. D.D.C. 1993); *see*, *e.g.*, *Wing v. Dockstader*, No. 2:08 cv 776, 2010 WL 5020959, at *6 (D. Utah Dec. 3, 2010); *Rieser v. Hayslip (In re Canyon Sys. Corp.)*, 343 B.R. 615, 646 (Bankr. S.D. Ohio 2006). *Contra*, *e.g.*, *Solow v. Reinhardt (In re First Commercial Mgmt. Grp., Inc.)*, 279 B.R. 230, 236-39 (Bankr. N.D. Ill. 2002); *Balaber-Strauss v. Sixty-Five Brokers (In re Churchill Mortg. Inv. Corp.)*, 256 B.R. 664, 680-84 (Bankr. S.D.N.Y. 2000), *aff'd sub nom. Balaber-Strauss v. Lawrence*, 264 B.R. 303 (S.D.N.Y. 2001). However, this court need not address this issue, because the only evidence before
(continued...)

defendant's investment is concerned, the cases hold that a Ponzi investment contract is unenforceable in excess of the investment, so an investor does not receive reasonably equivalent value in exchange for interest payments received. *E.g.*, *Perkins v. Haines*, 661 F.3d 623, 626 (11th Cir. 2011); *Donnell v. Kowell*, 533 F.3d 762, 770 (9th Cir. 2008); *Sender v. Buchanan (In re Hedged-Investments Assocs., Inc.)*, 84 F.3d 1286, 1290 (10th Cir. 1996); *Walls v. Cocchini (In re Bolze)*, Bankr. No. 09-30075, Adv. Nos. 10-3049, *et al.*, 2011 WL 2747377, at *6 (Bankr. E.D. Tenn. July 13, 2011); *see Scholes v. Lehmann*, 56 F.3d 750, 757-58 (7th Cir. 1995). Accordingly, the court concludes that the plaintiff is entitled to summary judgment on his alternative theory of recovery of the transfers under Subparagraph (B) of § 548(a)(1) of the Bankruptcy Code.

**B.**

The answer filed by the defendant relied on 11 U.S.C. § 548(c), which provides that "a transferee . . . of such a transfer . . . that takes for value and in good faith has a lien on or may retain any interest transferred . . . to the extent that such transferee . . . gave value to the debtor in exchange for such transfer." This provision constitutes an affirmative defense, upon which the defendant has the burden of proof. *Wilson v. Carman (In re Blazo Corp.)*, 73 F.3d 361 (6th Cir. 1995) (unpublished table decision), *available at* 1995 WL 764130, at *3. Yet the defendant, as the "non-moving party with the burden of proof on the issue in question," has not "produce[d] sufficient evidence upon

---

[6] (...continued)
the court is that "the commissions which were paid to the [defendant] for [her] services were disproportionate to like commissions paid for like services in the marketplace during the Relevant Period by similar but legitimate business entities," *Churchill Mortg. Inv. Corp.*, 256 B.R. at 679, and so the debtor did not receive reasonably equivalent value in exchange for the compensation that the plaintiff is seeking to recover in this proceeding, even if the Forex Project is viewed as a legitimate business enterprise.

which a jury could return a verdict favorable to the nonmoving party." *Katz v. Wells (In re Wallace's Bookstores, Inc.)*, 316 B.R. 254, 263 (Bankr. E.D. Ky. 2004).

Although the defendant produced some evidence that she received the transfers in good faith, she has not produced any evidence that she gave value to the debtor in exchange for the transfers to the extent that the plaintiff seeks to avoid them. Even if one were to conclude that the defendant's services were of some value to the debtor, the affidavit of the plaintiff's forensic accountant establishes that the compensation that the defendant is being permitted to retain far exceeds that value. According to the expert, reasonable compensation for the period that the defendant worked for the debtor would have been $64,928.33, while the plaintiff's motion for summary judgment would permit the defendant to retain $127,155.68 in compensation. Hence, any value for the services rendered by the defendant to the debtor for purposes of a possible §548(c) defense would be more than offset by the transfers that the plaintiff is not seeking to avoid. Accordingly, there is no genuine issue that the commissions and bonuses that the plaintiff *is* seeking to avoid had no value to the debtor over and above the compensation that the plaintiff is *not* seeking to avoid. The plaintiff is, therefore, entitled to summary judgment on the § 548(c) affirmative defense.

## C.

Transfers that are avoided under § 548 of the Bankruptcy Code can be recovered by the plaintiff pursuant § 550(a) of the Bankruptcy Code. That section reads, in pertinent part:

> Except as otherwise provided in this section, to the extent that a transfer is avoided under section . . . 548 . . . of this title, the trustee may recover, for the benefit of the estate, the property transferred, or if the court so orders, the value of such property, from—
>
> (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or

(2) any immediate or mediate transferee of such initial transferee.

11 U.S.C. § 550(a). In this proceeding, the debtor was the initial transferee of all of the avoidable transfers. *See Taunt v. Hurtado (In re Hurtado)*, 342 F.3d 528, 533-35 (6th Cir. 2003).

Prejudgment interest is to be awarded at the rate prescribed by 28 U.S.C. § 1961(a) since the plaintiff's cause of action is based on federal law. *DuVoisin v. Anderson (In re S. Indus. Banking Corp.)*, 87 B.R. 518, 523-24 (Bankr. E.D. Tenn. 1988). And, as the court has previously held, in the absence of proof of an earlier demand, prejudgment interest is awarded from the date the complaint was filed. *Davis v. Barcom, Inc. (In re Quebecor World (USA))*, Bankr. No. 08-10152-JMP, Adv. No. 11-1009, 2012 WL 37547, at *5 n.4 (Bankr. E.D. Tenn. Jan. 9, 2012); *Jahn v. Genesis Merchant Partners, LP (In re U.S. Ins. Grp., LLC)*, 451 B.R. 437, 447 (Bankr. E.D. Tenn. 2011) (citing *S. Indus. Banking Corp.*, 87 B.R. at 522-23); *accord*, *e.g.*, *Turner v. Davis, Gillenwater & Lynch (In re Inv. Bankers, Inc.)*, 4 F.3d 1556 (10th Cir. 1993). Accordingly, the court will award prejudgment interest commencing June 9, 2010.

**D.**

Section 502(d) of the Bankruptcy Code provides that "the court shall disallow any claim of any entity from which property is recoverable under section . . . 550 . . . of this title or that is a transferee of a transfer avoidable under section . . . 548 . . . of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section . . . 550 . . . of this title." The court holds that property is recoverable from the defendant under § 550 and transfers to the defendant are avoidable under § 548. Accordingly, the

court will disallow all claims the defendant has asserted or may hereafter assert in the debtor's chapter 7 case, unless and until she satisfies the judgment being entered against her.[7]

### IV.

For the foregoing reasons, the court will enter a judgment in favor of the plaintiff and against the defendant that avoids the transfers that have been identified herein as being avoidable under § 548(a)(1)(A) and (B) of the Bankruptcy Code, and that awards the plaintiff a recovery from the defendant of the amount of $432,009.51, plus the costs of this proceeding plus prejudgment interest from June 9, 2010, at the rate prescribed by 28 U.S.C. § 1961(a), plus interest on the judgment until it is satisfied. The judgment will also disallow the defendant's claims in the debtor's chapter 7 case.

###

---

[7] The court does not deem it necessary to address at this time the substantive grounds asserted by the plaintiff for disallowing the defendant's claims or the claims' entitlement to priority treatment. In the event the defendant satisfies the judgment being entered against her, the trustee may reassert those substantive grounds in new or renewed objections to the claims.